## Commonwealth v. Montgomery Ward & Company, Inc.

*Melvin Caplan,* for Commonwealth.
*Lawrence J. Lepidi,* for appellant.

KIESTER, *P.J.,* May 4, 1981—A hearing was held on April 27, 1981 before this court on the appeal of Montgomery Ward & Co., Inc. and James E. Wehr from the order of Department of Transportation suspending inspection station privileges.

Mr. Wehr has been the service manager at Montgomery Ward for 14 years. His certification as an official inspection mechanic was suspended for a period of three months, effective February 13, 1981. The suspension of the Montgomery Ward Auto Center was for a period of one year, effective February 13, 1981.

The suspensions are based on the alleged faulty inspection on a 1974 Dodge Charger Coupe, Registration 508491, by mechanic James E. Wehr.

It is noted that the official inspection station supervisor's report of November 13, 1980, which was the basis for the suspension order, concludes with the following recommendation by the supervisor, Edward J. Meier of the Pennsylvania State Police:

"12 Action Recommended.

Letter of cease and desist to mechanic James E. Wehr for improper inspection."

"It is recommended by this reporting officer that Montgomery Ward Auto Center *NOT* be penalized for the improper inspection done by the above mechanic." (Cw. Ex. "3").

On October 28, 1980 Trooper Meier observed the vehicle in question at A.U.A. Truck and Trailer Repair, Inc. It was there due to "mechanical difficul-

ties" which were not described. The "ragged" condition of the vehicle attracted the attention of Officer Meier and he ordered a re-inspection. The vehicle according to the odometer had been driven 265 miles after the inspection dated October 20, 1980 at the Montgomery Ward Auto Center.

The defects discovered by the officer on October 28, 1980 were as follows:

1. Sheet metal on the body had sharp edges, (excessive).

2. Excessive play in the idler arm.

3. Horn and turn signals not working.

4. Doors on both sides, worn hinges, had to lift door to close.

5. Left front fender "loose." (inner fender well separated from fender).

Officer Meier is a certified mechanic and was the only witness for the Commonwealth. Neither the owner of the vehicle nor the mechanic who inspected this vehicle at the A.U.A. Truck and Trailer Repair, Inc. were called as witnesses. No photographs of the vehicle were made. Montgomery Ward had no opportunity to re-examine the vehicle. There was no disclosure as to when or where repairs, if any, were made to the vehicle.

The only witnesses, Officer Meier and Mr. Wehr, both testified that the defects numbered 2, 3 and 5 could have developed ater the vehicle left the Montgomery Ward inspection station. This would be understood by any person operating a vehicle through the maze of crater-like potholes which continue to make driving hazardous on highways in Western Pennsylvania.

Alleged defect 4 states, "Doors on both sides, worn hinges, had to lift door to close." Both Officer Meier and Mr. Wehr testified that the doors closed and latched tightly when closed. Officer Meier said

that he had to lift the doors to close them. The regulation provides:

"Doors—Inspect the door latches, locks, hinges, and handles for proper operation, fastening, bad adjustment, and broken or missing parts. Try the doors and locks. The tailgates shall be included in this check. The vehicle shall be rejected if the doors or door parts are missing, broken, or sagging so that the door cannot be tightly closed." 67 Pa. Code § 175.133(d).

The doors could be tightly closed and we find no violation of this regulation.

The defect seriously pursued was no. 1 "Sheet metal on the body had sharp edges (excessive)." The testimony was that fiber glass had been molded on a front fender—that it had "sharp edges"—that the fiber glass was "not smoothed out,"—that it "protruded $\frac{1}{8}$th of an inch"—that one could not rub the hand over it without "tearing the skin."

Department regulation numbered and entitled "481.3 Body and sheet metal inspection" provides as follows, 67 Pa. Code § 175.133(a):

| PROCEDURE | REJECT VEHICLE |
|---|---|
| "(a) Rusted or protruding metal.—Inspect for torn or rusted metal, body, or accessories." | If torn metal, glass, or other loose or dislocated parts protrude from the surface of the vehicle causing a safety hazard or if rust spots are completely through the metal, larger than ¾ inch, with rough edges and in a location which will endanger persons accidentally coming into contact with the vehicle. |

In our opinion a one-eighth inch protrusion of fiber glass does not constitute a safety hazard

within the meaning of this regulation. Otherwise, the regulation would be unreasonable and unenforceable.

What was described was not torn metal, glass or other loose or dislocated parts protruding from the surface of the vehicle. Existing on the fender was rough and ugly fiber glass repairs that remained unfinished. Such a condition is not a violation of the regulation.

The first inspection at Montgomery Ward took place on October 15, 1980. The vehicle was rejected because of the separation of a rear quarter panel from the body. The customer returned with the vehicle five days later, the required repairs having been made. After checking the lights and determining that the panel had been secured, the inspection sticker was issued. At that time the vehicle had traveled 25 miles.

Mr. Wehr testified that the instructor at the inspection station school advised the class to give the customer ten days to correct any defect.

The recommendation of the state instructor might be considered fair and reasonable to both the customer and the operator of the inspection station. Nevertheless, it is a violation of the regulations: 488.1, 488.2, 488.3.

The vehicle rejection procedure should be posted at every inspection station. The department should notify inspection stations that violations of the regulation will be prosecuted. This was not an issue in the case and based on the testimony would not support a prosecution.

The Commonwealth failed to prove a violation of the Vehicle Code and the regulations of the Department promulgated thereunder: 75 Pa.C.S.A. §4724. The burden was on the Commonwealth to

establish that alleged defects 2, 3 and 5 existed when Mr. Wehr inspected the vehicle. The court finds that the conditions described and the evidence presented in support of alleged defects 1 and 4 do not constitute violations of the regulations. In suspending the inspection privileges the department, through its agents, has abused the discretion vested in it.

A harsh, undeserved penalty was imposed on Mr. Wehr and the Montgomery Ward Auto Center through no fault of the inspecting officer. Trooper Meier properly investigated and performed his duty under the law in reporting what he found. His recommendation should have been followed.

### ORDER

Now, May 4, 1981, the order of the Department of Transportation, Bureau of Traffic Safety, Commonwealth of Pennsylvania, Robert P. Spena, Director, issued February 13, 1981, suspending the Certification of James E. Wehr, Operator #12-847-995, 210 B. Greenview Drive, Butler, Pa., as an official inspection mechanic, is reversed.

It is ordered that the said certification be restored forthwith.

The order of the Department of Transportation, Bureau of Traffic Safety, Commonwealth of Pennsylvania, Robert P. Spena, Director, issued February 13, 1981, suspending the certificate of appointment to Mr. John A. Rogalski, O.I.S. #A-963, Montgomery Ward Auto Center, 300 New Castle Road, Butler, Pa., of the privilege to inspect motor vehicles in Pennsylvania is reversed.

It is ordered that said certification be reinstated forthwith.